IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MIHIRKUMAR JAYANTIBHAI PATEL and<br>FIRST NAME UNKNOWN (FNU) PATEL,<br>ALSO KNOWN AS EDDIE PATEL | Case No. 5:19-mj-116<br><br>UNDER SEAL |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Rodney J. Naramore, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

### Introduction

1. I have been employed as a Special Agent of the FBI since January 1995, and I am assigned to the Columbia Division in Columbia, South Carolina. I have been employed as a Special Agent with the FBI since January 8, 1995. As an FBI Agent, I investigate various crimes to include Civil Rights, Public Corruption and Cyber Crime. I have received investigative training in violations of both civil rights and public corruption. I have received technical training regarding computer technology, computer intrusion, and computer fraud. In addition to my investigative experience, I have served as a Supervisory Special Agent responsible for managing an investigative squad conducting both Civil Rights and Cyber Crime investigations.

2. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3. I am investigating the activities of Mihirkumar Jayantibhai Patel, also known as "Mike Patel," (hereinafter Mihir) and First Name Unknown (FNU) Patel, also known as Eddie Patel,

(hereinafter Eddie) who reside in Greenwood, South Carolina. As will be shown below, there is probable cause to believe that Mihir and Eddie have operated and continue to operate an unlicensed money transfer business. Further, as will be shown below, Mihir and Eddie participated in in unlicensed money transfer by receiving a specified amount of Indian Rupees in India and providing a Confidential Source a specified amount of U.S. Dollars in South Carolina, affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1960 and 18 U.S.C. § 2 (aiding and abetting). I submit this application and affidavit in support of a criminal complaint charging Mihir and Eddie with this offense.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, including Special Agents with the Federal Bureau of Investigation, and witnesses. I have not included all the information known to me concerning the investigation because the purpose of this affidavit is to establish probable cause under the relevant Federal Code Sections stated above. For the purpose of establishing probable cause I am relying only on the facts contained herein.

## STATUTORY AUTHORITY

5. This investigation concerns violations of:

    a. 18 U.S.C. § 1960 ("Whoever knowingly conducts, controls, manages, supervises, directs or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.")

    b. 18 U.S.C. § 2 ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. Whoever willfully causes an act to be done which if directly performed

2

by him or another would be an offense against the United States, is punishable as a principal.")

## BACKGROUND OF THE INVESTIGATION

6. Since in or around March 2018, the Federal Bureau of Investigation (hereinafter FBI) has been conducting an ongoing investigation into public corruption, human trafficking, immigration fraud, and criminal enterprise activity throughout South Carolina and other states. Mihir and Eddie have been identified as an individual assisting with the criminal enterprise through an unlicensed money transmitting business.

7. As part of this investigation, the FBI developed a Confidential Source (hereinafter CS1) who was in a position to provide information and evidence relative to the alleged criminal violations. CS1 has previously provided information related to the Public Corruption and immigration fraud portions of this investigation. Through independent sources, including records, recordings, and Title III intercepts, CS1's information has been corroborated. CS1 has no criminal record, but CS1 did disclose that he participated in an unlicensed money transfer. CS1 has also assisted in this investigation regarding unlicensed money transfers. The information CS1 provided in this case has been independently corroborated, through records and covert recordings.

## PROBABLE CAUSE

8. On March 21, 2018, CS1 participated in a consensually monitored telephone call with Mihir. This conversation was conducted in the Gujarati language, but a summary translation has been completed by an FBI Language Specialist. During the conversation, Mihir advised CS1 that he could assist CS1 with transferring money from India to the United States. Mihir told CS1 that he could provide CS1 with $100,000 the next day if needed. CS1 would pay money to Mihir's

representative in India and then Mihir would provide CS1 with funds here in the United States. The funds would be all cash, or half in cash and half by check.

9. On March 29, 2018, CS1 participated in a consensually monitored telephone call with Mihir. This conversation was conducted in the Gujarati language, but a summary translation has been completed by an FBI Language Specialist. This conversation was a continuation of the conversation on March 21, 2018. Mihir told CS1 that he has $200,000 here in the United States, but that he needs funds in India. Mihir told CS1 that if he/she (CS1) does not need the funds, then Mihir will give the money to someone else, so that he can get the funds he needs in India. CS1 explained to Mihir that he/she is closing on the purchase of a hotel on the 18th of April and will need the funds at that time. CS1 told Mihir he/she needs a total of $2.5 million for a down payment, but he/she only has $2.1 or $2.2 million here in the United States. CS1 will check with his/her bank to find out how much he/she needs for closing. Mihir told CS1 that it is not a problem.

10. On March 30, 2018, CS1 participated in a consensually monitored telephone call with Mihir. This conversation was conducted in the Gujarati language, but a summary translation has been completed by an FBI Language Specialist. This conversation was a continuation of the conversation on March 29, 2018. CS1 told Mihir that it would be a few days and Mihir could give the money to someone else. CS1 told Mihir that he/she would let him know something in two weeks.

11. On or about April 1, 2018, CS1 attended a community party at his/her Temple. CS1 rode with Ghanshyambhai Amrutbhai Patel, also known as "G," (hereinafter G) to the party. G brought a bag with him and CS1 was able to see bundles of cash inside the bag. G told CS1 the money was $100,000 that Mihir was loaning at 18% interest to an Indian out of Boston, who

planned to buy a convenience store. At the party, CS1 observed G and Mihir meeting with the Indian male from Boston.

12. Mihir contacted CS1 telephonically on April 5, 2018. This call was not recorded. CS1 advised that Mihir wanted to know if CS1 was ready to transfer $100,000 from India to the United States. CS1 told Mihir, he/she was not ready.

13. On May 2, 2018, CS1 unexpectedly ran into Mihir at a restaurant in Columbia, South Carolina. This conversation was not recorded. CS1 asked Mihir how his business was going. Mihir told CS1 that he is doing about $1,000,000 a month in money transactions.

14. On July 6, 2018, CS1 advised that Rasiklal Patel, also known as "Rocky," (hereinafter Rocky), told CS1 that he had used Mihir to transfer approximately $14,000 to India to help pay for expenses associated with building a home there.

15. On October 14, 2018, CS1 was in the kitchen at the Temple in Orangeburg with Dinesh Patel and Dipen Patel, who are both cooks at the Temple. The Temple provides catering services for a fee. Mihir came into the kitchen with stacks of cash. CS1 consensually recorded this impromptu meeting which was conducted in the Gujarati Language, but a summary translation has been completed by an FBI Language Specialist and CS1 provided additional details about the meeting. Mihir paid the Temple cook $3,000 for catering an event for him. Mihir also gave the Temple cook $5,000 cash and instructed him to give the $5,000 to Uncle Rasik (known to CS1 as Rocky) for his commission on business that Rocky brought to him.[1] CS1 had previously made a $500 bet with Mihir that the value of the Indian Rupee to the U.S. Dollar would rise to 80 Rupees. CS1 asked Mihir for his/her $500 payoff of the bet. Mihir commented that CS1 was

---

[1] CS1 understood the business to which Mihir was referring to be illegal money transfer business.

worrying about $500 when he (Mihir) has $150,000 cash in his car. Mihir then took CS1, Dipen and Dinesh outside to his car and showed them the money.

16. On December 27, 2018, CS1 advised that he/she received $50,000 from Mihir to assist with closing on a purchase of a gas station and convenience store in Charleston, South Carolina. CS1 had his/her stepson, who is currently living in India, complete one of CS1's bank checks for 17 lakhs Rupees (the equivalent of $50,000) without identifying a payee. CS1's stepson gave this check to a person he did not know who came and asked for it. Later, Rocky called CS1 to say that he had the check. CS1 advised Rocky and Mihir are partners and Rocky was visiting India at the time. The next day or so, Mihir gave CS1 $50,000 in cash here in the United States, in a parking lot near the Lexington Medical Center.

17. On April 1, 2019, CS1 advised that Mihir showed him/her records on his (Mihir's) cellular telephone (Phone 1) of money transfers he was making between the United States and India. Mihir told CS1 that he has a contact in Dubai that he uses for larger transactions.

18. On May 30, 2019, CS1 advised that Mihir keeps the cash for his money transmitting business at his house. The cash is stored in trash bags in his attic and hidden in other places around his house. When Mihir transports cash in his vehicle, he hides the money in a trash bag filled with garbage. It is CS1's understanding that Mihir and other people in the money transfer business keep records of their customers, both those who have provided money and those who have received money.

19. On July 9, 2019, CS1 participated in a consensually monitored conversation with Mihir on WhatsApp. This conversation was conducted in the Gujarati language, but a summary translation has been completed by an FBI Language Specialist. CS1 told Mihir that he/she needed to do a $25,000 transaction in India. CS1 told Mihir that he/she would give him a check

for the $25,000 over there (in India) and Mihir would give him/her cash here (in the United States). Mihir said okay, no problem. CS1 told Mihir he/she would like to do it (the transaction) four times. Mihir said that's not a problem.

20. Several days later on August 6, 2019, Mihir tells CS1 that he/she will have to provide 14 lakhs and 45,000 rupees in India to receive $20,000 in the United States. CS1 asked Mihir what was the rate he was using and Mihir said 72.25 rupees [exchange rate of 72.25.rupees per U.S. dollar]. This WhatsApp conversation with Mihir was consensually monitored and was conducted in the Gujarati language, but CS1 provided a summary translation of the conversation. CS1 informed the Affiant that the legitimate bank exchange rate at that time was 68.20 rupees per U.S. dollar. Essentially, Mihir and Eddie are making 4.05 rupees per U.S. dollar or about 81,000 rupees, the equivalent of about $1,187 U.S. dollars.

21. On July 9, 2019, CS1 participated in a consensually monitored conversation with Mihir on WhatsApp. This conversation was conducted in the Gujarati language, but a summary translation has been completed by an FBI Language Specialist. This conversation was a continuation of the earlier conversation with Mihir on July 9, 2019. CS1 told Mihir that he/she wanted to transfer $20,000 to $25,000 from India in three to four installments. Mihir told CS1 to send cash only. CS1 informed Mihir that he/she has an Axis bank check (a check drawn on CS1's Axis bank account in India) and told Mihir to give him/her cash here in the United States. CS1 told Mihir that he/she is not in a hurry and that Mihir could give him/her the money next week. CS1 asked Mihir if Rocky is his partner. Mihir confirmed that Rocky is his partner. CS1

says to Mihir that Rocky is a millionaire. Mihir agreed and said that Rocky has two hundred to three hundred crore.[2]

22. On July 10, 2019, CS1 participated in a consensually monitored conversation with Mihir on WhatsApp. This conversation was conducted in the Gujarati language, but a summary translation has been completed by an FBI Language Specialist. This conversation was a continuation of the previous conversation on July 9, 2019. Mihir explained to CS1 that he is having a hard time finding someone in India who would accept a check. CS1 said he/she had money in Axis Bank and would like to transfer the money to the United States in installments. CS1 told Mihir he/she would give him a check for $20,000 (in India) and Mihir will give CS1 $20,000 cash here (in the United States). Mihir said he had to find someone who will take the check. CS1 asked if there was anybody in India that would accept the check. Mihir replied that nobody will take the check because it can be traced back to them. Mihir said he was trying to work something out.

23. On July 15, 2019, CS1 participated in a consensually monitored conversation with Mihir on WhatsApp. This conversation was conducted in the Gujarati language, but CS1 provided a summary translation of the conversation. CS1 asked Mihir if he had found out anything about his money transfer. Mihir said he would check, but no one in India will take a check, only cash. Mihir said he is still working on it. CS1 suggested Mihir check with his partner Rocky. Mihir said Rocky was his partner, but he deals more with Yogi (known to CS1 as Yogeshkumar Patel). Mihir said he will keep working on CS1's money transfer and will call CS1 back tomorrow.

24. On August 1, 2019, CS1 participated in a consensually monitored conversation with Mihir on WhatsApp. This conversation was conducted in the Gujarati language, but CS1

---

[2] One crore equals approximately USD $144,510.00. The market value of currencies fluctuates daily.

provided a summary translation of the conversation. Mihir said he was on his way home from Myrtle Beach. CS1 asked about his money transfer. Mihir said no one will take the paper [check]. CS1 said give me less rupees on the rate. Mihir said he was working on that. CS1 said he would come to Greenwood tomorrow to pick up the money. Mihir told CS1 not to come tomorrow because he was traveling to Florida to watch a cricket match.

25. On August 1, 2019, CS1 participated in a consensually monitored conversation with Mihir on WhatsApp. This conversation was conducted in the Gujarati language, but CS1 provided a summary translation of the conversation. This conversation was a continuation of the previous conversation with Mihir on August 1, 2019. Mihir told CS1 that his friend is going to handle everything and Mihir turned the phone over to First Name Unknown (FNU) Patel, also known as Eddie Patel (hereafter Eddie) whom CS1 did not know. CS1 told Eddie that he/she would give Eddie rupees in India and Eddie would give CS1 $20,000 cash here in the United States. Eddie said ok and that he charged a 4% fee. Eddie told CS1 that he needed a blank check [no payee listed] with the amount filled out. CS1 asked if he only needed one check and Eddie said he needed the amount broken out into four checks and then Eddie turned the phone back over to Mihir. CS1 told Mihir he did not know this guy and Mihir said it is my responsibility and told CS1 not to worry about it. Mihir told CS1 to provide the check in India and Eddie will get started working on the transfer. Mihir said Eddie would tell CS1 who in India to give the check to. CS1 informed Mihir that he/she is going to Atlanta and will stop by Greenwood on the way to pick up the money. Mihir said ok.

26. On August 2, 2019, CS1 participated in a consensually monitored conversation with Mihir on WhatsApp. This conversation was conducted in the Gujarati language, but CS1 provided a summary translation of the conversation. Mihir asked CS1 why he/she keeps calling

9

him. Mihir said he was traveling to Florida and that he had given CS1's telephone number to Eddie. Mihir said he had turned over this job to Eddie and to wait a few minutes and Eddie would call CS1. CS1 told Mihir that he/she does not know Eddie and that CS1 only knew Mihir. Mihir told CS1 not to worry because he (Mihir) is responsible for both sides of the deal [the transaction in India and the transaction in the U.S.]. CS1 told Mihir to be sure to take the responsibility. Mihir confirmed that he would take the responsibility for the money transfer and told CS1 not to worry about it. Mihir went on to say that he has told CS1 a million times that it is his (Mihir's) responsibility on both sides of the deal and not to worry about it. Mihir said that Eddie would call CS1 shortly. Mihir said that Eddie will be handling the job, but Mihir will be assisting him. CS1 continued to express concerns over Mihir bringing Eddie into their deal. CS1 asked Mihir why he would bring Eddie into the deal when CS1 and Mihir have done money transfers before. CS1 told Mihir that if he/she worked with Eddie on this deal, that Mihir needed to make sure CS1 didn't have any problems in India. Mihir told CS1 not to worry about anything. Mihir told CS1 to give Eddie a blank check. CS1 said it is risky to give him a blank check. Mihir said he meant to write in the amount of money, but leave the name blank [payee name]. Mihir reiterated that he would be responsible for the deal.

27. On August 2, 2019, CS1 participated in a consensually monitored conversation with Eddie on WhatsApp. CS1 returned a call to Eddie on telephone number, (864) 407-0108 (Phone 2). This conversation was conducted in the Gujarati language, but CS1 provided a summary translation of the conversation. CS1 told Eddie that Mihir had instructed him/her to talk to Eddie [about the money transfer]. CS1 asked Eddie how he/she needed to make the check out for and if he only wanted one check. Eddie instructed CS1 to make out four checks with different [payee] names on each check. Eddie explained that the banks won't cash one large check. Eddie

told CS1 to give him rupees in India. CS1 told Eddie to check with Mihir for the rate [amount] to put on the check. Eddie agreed to contact Mihir for the rate and would call CS1 back. Eddie said he would text CS1 with the name and number of his contact [who to give the money to] in India.

28. During the period of August 5, 2019 through August 12, 2019, CS1 had many consensually recorded conversations with Mihir and Eddie to setup the transfer of $20,000 in India to the United States. Due to the difficulty of finding someone in India who would accept CS1's check, CS1 agreed to provide the funds in India in cash. On August 6, 2019, Eddie sent CS1 a text message with the name and telephone number of his contact in India. The message read "7433881472 Takki." Eddie instructed CS1 to provide 14 Lakhs and 45,000 rupees in cash to Takki in India. On or about August 13, 2019, CS1's relative, who lives in India, provided the cash payment to Takki.

29. On August 13, 2019, CS1 participated in a consensually monitored conversation with Eddie on WhatsApp. This conversation was conducted in the Gujarati language, but CS1 provided a summary translation of the conversation. Eddie confirmed that he had received the money in India and told CS1 to come and pick up his/her money in Greenwood. Eddie told CS1 to tell his/her relative to not ask so many questions and to not talk too much on the phone. Eddie explained that in this kind of business you can't do that. CS1 asked Eddie to text him/her the address of the Dairy Queen in Greenwood where he/she was supposed to pick up the money. Eddie sent a text message to CS1 which read "dq greenwood 217 bypass72 nw greenwood sc29649 [sic]."

30. On August 13, 2019, CS1 participated in a consensually recorded meeting with Eddie. This meeting was conducted in the Gujarati language, but CS1 provided a summary of the

11

conversation. CS1 met with Eddie at the Dairy Queen located at 217 SC-72 Business, Greenwood, South Carolina. Eddie led CS1 to his office at the back of the Dairy Queen store. Eddie provided CS1 with $20,000 cash, completing the illegal money transfer. CS1 asked if he/she needed to count the money and Eddie said no, it had already been counted and showed CS1 a money counting machine. Eddie said since it is our first deal go ahead and count it. CS1 said he/she was headed to the bank to get a Cashier's Check and did not need to count it. CS1 asked Eddie how long he had been in this business [money transfer business], but Eddie did not want to tell CS1. Eddie told CS1 that Mihir had stopped this business, but asked him to do this for CS1. CS1 asked Eddie to call Mihir on the phone. Eddie said there is a lot of checking going on and that it is very dangerous right now [in the money transfer business]. That's why Mihir stays away. Eddie called Mihir and put him on speaker phone. Mihir told CS1 that he was on his way to the Dairy Queen and to wait for him. Eddie told CS1 that he has $200,000 cash sitting in the Dairy Queen safe and it is always unlocked. Eddie asked CS1 why he/she was worrying about a small $20,000 transfer [implying that he (Eddie) has plenty of cash to handle the transfer]. CS1 told Eddie that he/she needed to transfer another $100,000 from India to the United States. Eddie said he could make it happen in one minute and did not even have to leave his chair.

31. While waiting for Mihir to arrive, CS1 asked Eddie if he owned the Dairy Queen. Eddie said he was a partner in the ownership of the Dairy Queen, but his name was not on the paperwork. The Dairy Queen is in the name of one of Eddie's relatives. [CS1 advised the Agents that he/she believed Eddie was in the United States illegally and that is why his name was not listed on the Dairy Queen paperwork.] Eddie said he had owned the Dairy Queen for about 10 years.

32. Mihir arrived at the Dairy Queen to meet with CS1. This was a consensually recorded meeting conducted in the Gujarati language, but a summary translation has been completed by an FBI Language Specialist and CS1 provided additional details about the conversation. Mihir told CS1 that he still has to obtain the green one [green card], so he has completely stopped this business [money transfer business] for the last six to eight months. Mihir said that they [Immigration] are reviewing his case [file] and he doesn't want any problems. Mihir further added that this brother (Eddie) was doing this [money transfer] before, and he told the brother to handle everything, but he (Mihir) will be responsible [for the transaction]. Mihir said he had been in the United States illegally for 19 years and now it [green card] is on the way and I don't want to screw it up. CS1 said he/she understood. CS1 said that he should have told him/her that before. Mihir said he did mention it before, but CS1 didn't understand what he was saying. CS1 asked how he/she could understand that language [code word]. Mihir told CS1 that it didn't matter to him [through whom CS1 sends his/her money], but he (Mihir) didn't want to risk [losing his green card] for five to six thousands rupees. Mihir instructed CS1 to deal with Eddie for any future business [money transfers], but understand that it will be his (Mihir's) responsibility.

33. On or around August 1, 2019, a check of the CLEAR database for telephone number (864) 407-0108 (Phone 2) reflected this phone number is associated with PRK Patel. According to Accurint business records, a PRK LLC is business registered to Mihir Patel at 311 Oakmonte Circle, Greenwood, South Carolina, Mihir's home address. According to Accurint records this phone number was also associated with Sheida Abbasi of Greenwood, South Carolina in 2017. Abbasi is also previously associated with the address 102 Marble Court, Greenwood, South Carolina. The 102 Marble Court address is owned by Mohmed Saif Momin. Accurint business

records further reflect Momin as previously associated with the Dairy Queen located at 217 SC-72 Business, Greenwood, South Carolina (Business 1). According to the Dairy Queen website www.dairyqueen.com, the telephone number of the Dairy Queen in Greenwood is (864) 223-9234. CLEAR records reflect telephone number (864) 223-9234 is assigned to the Dairy Queen in Greenwood and the contact person is Saif Momin. Momin's title is listed as "owner."

34. On August 13, 2019, at the time CS1 was scheduled to meet with Eddie at the Dairy Queen, surveillance observed an individual fitting the description of Eddie hosing down the parking lot of the Dairy Queen. Surveillance also identified one vehicle parked in the Dairy Queen parking lot. The vehicle was described as a silver Honda Accord bearing South Carolina license plate NMC845. South Carolina Department of Motor Vehicles records reflect this vehicle is a 2008 Honda Accord, registered to Mohmed Saif Momin, 102 Marble Court, Greenwood, South Carolina. CS1 advised the Agents that Eddie and a white female were the only people inside the Dairy Queen at the time of CS1's meeting with Eddie.

## CONCLUSION

35. Based on the information described above, I respectfully submit that there is probable cause to believe that Mihirkumar Jayantibhai Patel and FNU Patel, also known as Eddie Patel, who reside in Greenwood, South Carolina, operate an unlicensed money transfer business. I respectfully submit that there is probable cause to believe that Mihirkumar Jayantibhai Patel and FNU Patel, also known as Eddie Patel, have violated 18 U.S.C. § 1960 and 18 U.S.C. § 2.

36. I, therefore, respectfully requests that the attached warrant be issued authorizing the arrest of Mihirkumar Jayantibhai Patel and FNU Patel, also known as Eddie Patel.

## REQUEST FOR SEALING

37. It is respectfully requested that this Court issue an order sealing, until August 17, 2020 or until further order of the Court, this affidavit and warrants. I believe that sealing these document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

This Affidavit has been reviewed by Assitant United States Attorney William C. Lewis

_____
Rodney J. Naramore
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 20th day of August, 2019.

_____
Shiva V. Hodges
United States Magistrate Judge
District of South Carolina

15